McKinney, J.,
delivered tlie opinion of the Court.
The complainants are the administrators with the will annexed of the estate of Robert Wallis, who died in Maury cannty, in 1846. Some years before his death, said Robert Wallis made a will, and afterwards executed another paper of a testamentary nature, and to have the proper construction of these papers declared, was the purpose of the present bill.
The testator left surviving him his wife and five children and four grand-children, the children of his son, John Wallis, who died after the making of the will.
Margaret Wallis, widow of the testator, was nominated executrix of the will, and qualified as such. She died intestate, in 1858, and complainants were appointed administrators of her estate ; and administration on the estate of the testator, with the will annexed, was also granted to them.
The estate of the testator consisted of lands, slaves, and other personal property, which he devised and bequeathed as follows, viz :
“I, Robert Wallis, do hereby give and bequeath to my dear wife, Margaret, all my real estate, personal and mixed *616 estate, believing that she will make an equitable distribution of tlie property, at her death, among our children ; as she knows better than any other person what part they each of them have already received : she is getting old and infirm, and when I am gone this power to give will make them, I hope, dutiful and affectionate to her. as I hereby give her the power to reward those that are the most dutiful to her. Any part that may be given to my son John’s children, I request may be laid out in their education, as he has proven so unsteady; no part of my estate is to be given him, in any wajq or at any time, unless secured to his children, so sure I am that he would waste it.” This will bears date the 36th of January, 1836.
Afterwards, on the 16th of February, 1839, said Robert Wallis executed the following paper, viz :
“I, Robert Wallis, of Maury county, State of Tennessee, being in sound mind and good health, but considering the great uncertainty of human life, have thought it best to arrange my affairs as I wish them hereafter to stand. I have given a part of my property to each of my children, as they married or settled in life. I have made my will and provided for my dear, affectionate wife, Magaret D. Wallis. Believing the plantation, mills, &c., on which Samuel T. Tillman now lives, will return to me, as I believe he will be unable to pay for them ; if this does take place, I hereby, at my death, give and bequeath to my dear son, Robert M. Wallis, all the right, title and interest I may hereafter have to that property.”
Margaret Wallis, the widow, died intestate in 1858, without having made any distribution of the property amongst her children and grand-children, as contemplated by the will of the testator.
1st. We are of opinion that the paper of the 16th of February, 1839, must be read in connection with, and as part of the will; and that its effect is simply'to give “ the plantation, mills, &c.,” (which did, in fact, fall back to the testator',) *617 to his son Robert M. Wallis, as an advancement, leaving the will in all other respects, intact.
2d. We are of opinion that under the will, the widow took a life estate in the property, with a power of appointment coupled with a trust.
The position that, by the language of the will, the widow' had an absolute and uncontrollable power over the property, is not tenable. The gift is to her — “believing that she will make an equitable distribution of the property, at her death, among our children, as she knowTs better than any other person, wfhat part each one of them has already received.” The intention of the testator, that the widow', at her death, should distribute the property equitably amongst the children, is here clearly manifested. According to the current of authorities, these words must bo construed to be imperative, and not as conferring merely a naked power, which the party might or might not execute, in her discretion. In the case of Wright v. Atkyns, 1 Turn. & Russ., 157, cited in note to sec. 1070, 2 Story’s Eq. Jur., Lord Eldon says, that in order that words of recommendation, entreaty, or wish, shall be held to create a trust., it is necessary, first, that the words arc so used, that upon the whole, they ought to be construed as imperative ; secondly, that the subject of the recommendation or wdsli, be certain; and, thirdly, that (he objects or persons intended to have the benefit of the recommendation or wish, be also certain. According to this rulo, it is clear that a valid trust is here created.
■ The only discretion vested in the widow was in regard to the equality of the distribution. The rulo for the distribution of the property is prescribed ; it is to bo an equitable, that is, an equal distribution, subject to the qualification, not that she may appoint to such of the persons named in the will, as she may think proper, but simply that she may bestow a reward upon such of them as are most dutiful; in other words, she may make a just and reasonable discrimination, ■in the division of the'property, based upon the good or ill *618 conduct of the children towards her after testator’s death. But, still, the language of the will demands a real and substantial allotment to each one in the distribution.
3d. The power of appointment being coupled with a valid trust, and the widow having died without executing the power, a court of equity will hold the trust to survive, and will decree its execution ; of course it would be otherwise in the case of a mere naked power, not coupled with a trust. 2 Story’s Eq. Jur., Sec. 1061.
And in decreeing the execution of the trust, the court will have, respect, as far as practicable, to the wishes and intentions of the testator, apparent from the face of the will ; and will mould its decree accordingly, if there be nothing-inequitable, or improper in itself, in the provisions of the will. But it is obvious that this cannot always be done, to the full extent of the testator’s intentions. The present case furnishes an illustration of its impracticability in some instances.
The general intention of the donor of the power, that there shall be an equal distribution of the property amongst the persons named, is clearly expressed ; but there is likewise a particular intention, no less clearly indicated, by which, under certain circumstances, an inequality in the distribution may bo produced. And this is left entirely to the discretion and judgment of the donee of the power. The particular intention is to have effect or not, according to the donee’s own individual views of the relative dutifulness of the several children. Now, it is plain that, the donee having died wihtout executing the power, the court, when called on to execute the trust, cannot place itself in the shoes of the donee, so far as to inquire or decide whether or not the children were alike dutiful to their mother. The inquiry is impracticable ; the facts are not capable of ascertainment, in any satisfactory mode ; and were it otherwise, the judgment of the chancellor and of the mother might differ very widely ; in the heart of the mother, perchance, the prodigal son might still be the favorite, and thought worthy of the “ double *619 portion ” All that tlic court can do, therefore, in such cases, is to give effect to the general intention of the donor. Hence, in the present casé, the distribution must be equal, in the general sense contemplated by the testator : that is, after collating the advancements, and holding each one to account for whatever amount he may have received, by way of advancement, either in the lifetime of the testator or from the widow. The grand-children stand upon equal footing, under the will, with the children of the testator, and will bo entitled to one sixth part of the property or its proceeds.
The value of “ the plantation, mills, &c.,” will be charged to Robert M. Wallis at its reasonable value, at the death of the testator.
Decree affirmed.